UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORNELIUS OLUSEYI OGUNSALU,<br><br>Plaintiff,<br><br>v.<br><br>OFFICE OF ADMINISTRATIVE HEARINGS; CALIFORNIA COMMISSION ON TEACHER CREDENTIALING; CALIFORNIA ATTORNEY GENERAL'S OFFICE; ANI KINDALL; CHARA CRANE; & ADAM BERG,<br><br>Defendants. | Case No.: 3:17-cv-01766-GPC-AGS<br><br>**ORDER GRANTING DEFENDANT CHARA CRANE'S MOTION TO DISMISS FIRST AMENDED COMPLAINT; DENYING PLAINTIFF'S MOTION TO AMEND OR MODIFY JUDGMENT; DENYING AS MOOT PLAINTIFF'S MOTION TO COMPEL SERVICE AND DENYING PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT**<br><br>**[ECF Nos. 28, 31, 37, 39]** |

Before the Court is Defendant Chara Crane's motion to dismiss based on prosecutorial immunity which is fully briefed. ECF Nos. 39, 46, 54. Also before the Court is Plaintiff's fully briefed motion to amend the Court's judgment in its decision dismissing Defendants Office of Administrative Hearings, California Commission on Teacher Credentialing, Ani Kindall and Adam Berg. ECF Nos. 31, 41, 53. Finally, before the Court is Plaintiff's motion to compel service on Crane that is not opposed,

ECF No. 28, and motion to enter default judgment against Crane which is briefed. ECF No. 37, 50.

Based upon review of the pleadings and the applicable law, and for the reasons discussed below, the Court **GRANTS** Defendant Crane's motion to dismiss and **DENIES** Plaintiff's motion to amend judgment, motion to compel service and motion to enter default judgment.

## BACKGROUND

1. Procedural History

Ogunsalu filed his Complaint in this Court on September 1, 2017. Compl., ECF No. 1. Ogunsalu concurrently filed a motion to proceed *in forma pauperis*. ECF No. 2. The Court *sua sponte* dismissed without prejudice the Complaint for failure to state a claim. ECF No. 3. Ogunsalu then filed a Motion for Reconsideration of Court Order Dismissing Plaintiff's Complaint. ECF No. 4. The Court denied the motion and directed Ogunsalu to file an amended complaint. Order, ECF No. 8.

On July 25, 2018, Ogunsalu filed his First Amended Complaint alleging claims under 42 U.S.C. § 1983 and state law against Defendants Office of Administrative Hearings ("OAH"), California Commission on Teacher Credentialing ("CTC"), California Attorney General's Office ("OAG"), Ani Kindall ("Kindall"), Chara Crane ("Crane"), and Adam Berg ("Berg"). FAC, ECF No. 9. Counts I-VI bring claims under 42 U.S.C. § 1983 against all Defendants. Specifically, Counts I and IV advance claims for violation of due process and deprivation of property rights for depriving Ogunsalu of his teaching credentials by contriving false allegations. Count II brings a First Amendment retaliation claim. In Count III, Ogunsalu claims that Defendants conspired to violate his constitutional rights. Under the "stigma-plus doctrine," Ogunsalu claims in Count V that Defendants defamed him. Count VI brings a claim for intentional infliction of emotional distress. Counts VII and VIII are state law claims for civil conspiracy and intentional infliction of emotional distress as to Berg, Crane, and Kindall.

In the prayer for relief, Ogunsalu asks the Court to: 1) void the OAH order revoking his teaching credentials and denying his clear credential application; 2) order the CTC to reinstate his teaching credentials that were revoked; 3) order the CTC to grant his clear credential application; 4) order the California Attorney General's Office to cease and desist any retaliatory actions against Ogunsalu that are related to the First Amended Complaint; and 5) award damages.

On November 15, 2018, the Court granted Defendants CTC, OAH, Kindall and Berg's motion to dismiss. ECF No. 25. On December 20, 2018, the Court granted OAG's motion to dismiss. ECF No. 47.

2. Factual Background

a. The Parties

During the 2013-2014 school year, Ogunsalu served as a World History and Geography teacher at Bell Middle School, which is in the San Diego Unified School District ("SDUSD"). ECF No. 1-2 at 2. Ogunsalu had received a Preliminary Single Subject Teaching Credential on July 18, 2013, which was set to expire on June 1, 2016. *Id.*

Defendant Ani Kindall is General Counsel for the CTC. FAC, ECF No. 9 at 2. Defendant Adam Berg is an administrative law judge with OAH. *Id.* at 2. Defendant Chara Crane is an Assistant Attorney General of the California Attorney General's Office. *Id.* at 2. Defendants CTC, OAG, and OAH are all state agencies. *Id.* at 3.

b. Factual Allegations

On March 12, 2014, SDUSD notified Ogunsalu of non-reelection to his teaching position at Bell Middle School. FAC, ECF No. 9 ¶ 44. Ogunsalu sent emails to the SDUSD school board and the school principal, decrying the unlawfulness and unconstitutionality of his non-reelection. *Id.* ¶¶ 48-50. On March 14, 2014, SDUSD police seized Ogunsalu's laptop and classroom keys, and escorted him off campus. *Id.*

In July 2014, Ogunsalu submitted his application for a Clear Single Subject Teaching Credential, or "clear credential." *Id.* ¶ 28; ECF No. 1-2 at 2. A clear credential

is a lifetime credential that may be issued if the holder applies and pays for a fee for renewal every five years and meets all professional fitness requirements. Cal. Educ. Code § 44251(b)(3).

Though Ogunsalu was notified of his non-reelection in March 2014, he did not have a CTC hearing until February 2015. FAC ¶ 5. Ogunsalu claims that this excessive delay denied him procedural due process. *Id.* On February 18, 2015, a committee appointed by CTC recommended a 21-day suspension of Ogunsalu's preliminary teaching credential. *Id.* ¶ 4. Defendant Kindall attended the hearing and questioned Ogunsalu regarding allegations by SDUSD of child abuse. *Id.* ¶ 25. Ogunsalu alleges that the San Diego Police Department Child Protective Services investigated the claims and cleared him of the allegations, and that such allegations are false. *Id.*

Shortly after the February 2015 committee meeting, Ogunsalu sent an email to Kindall rejecting the recommendation for a 21-day suspension and claimed that the recommendation was motivated by racism and prejudice. *Id.* ¶ 40. Ogunsalu alleges that he exchanged contentious emails with Kindall. *Id.* ¶ 7. In March 2015, Ogunsalu sent emails to CTC officials titled, "WHO is now guilty of unprofessional conduct?" and "YOU KNOW EXACTLY WHAT TO DO." *Id.* ¶ 41.

Ogunsalu appealed the committee's recommendation of a suspension to OAH. *Id.* ¶ 4. In the subsequent administrative proceedings, the Office of the Attorney General and Crane sought revocation of Ogunsalu's preliminary credential and denial of his then-pending application for a clear credential, which was far beyond the CTC's recommendation of a 21-day suspension. *Id.* ¶¶ 4-6. Kindall, Crane, and Berg entered into a conspiracy to revoke Ogunsalu's credentials and deny his clear credential application in retaliation for Ogunsalu's emails. *Id.* ¶ 6-7, 40-41. Specifically, Defendants contrived false allegations that Ogunsalu committed child abuse and harassed students and teachers, as grounds for the revocation and denial of Ogunsalu's credentials. *Id.* ¶ 9, 26. CTC also alleged that Ogunsalu failed to disclose his non-reelection when he

4

3:17-cv-01766-GPC-AGS

submitted his application for a clear credential. *Id.* ¶ 29. However, Ogunsalu claims that he informed CTC of his non-reelection before submitting his application. *Id.* ¶ 30.

Crane, Kindall, and the CTC's executive director compiled every record possible on Ogunsalu, and scoured every data base and records sources, in order to justify the false accusations against him. *Id.* ¶ 41. Crane and Kindall also conspired with officials from SDUSD and Sweetwater Union High School District to falsify records that would justify revoking Ogunsalu's credential. *Id.* ¶¶ 42, 43. In late 2016, an OAH settlement conference was held. *Id.* ¶ 5. Crane attempted to coerce Ogunsalu to accept the 21-day suspension or face additional discipline. *Id.*

A hearing was held before Defendant Berg on November 14 and 15, 2016. *Id.* ¶ 51, 52. Berg was notified that Ogunsalu had filed a petition for writ of mandate to the California Court of Appeals. *Id.* ¶ 51. Ogunsalu claims that the filing of this petition should have stopped the administrative hearing. *Id.* Ogunsalu alleges Defendants presented falsely contrived evidence and perjured testimony at the OAH hearing. *Id.* ¶ 20. Ogunsalu further alleges that Defendants conspired to have his former students make up allegations against him that had not been alleged when SDUSD decided to non-reelect him. *Id.* ¶ 20.

Berg concluded that Ogunsalu harassed teachers and students at Bell Middle School, engaged in unprofessional conduct, and posed a significant danger of harm to students and staff. *Id.* ¶ 14. Berg further concluded that Ogunsalu's preliminary credential be revoked and his clear credential application should be denied, as it was the only discipline that will adequately protect the public. *Id.*

## DISCUSSION

A. <u>Defendant Crane's Motion to Dismiss</u>

    1. <u>Legal Standard</u>

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted

5

as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a plaintiff need not give "detailed factual allegations," a plaintiff must plead sufficient facts that, if true, "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545.

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002); *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). Legal conclusions, however, need not be taken as true merely because they are cast in the form of factual allegations. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003); *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

2. Analysis

a. § 1983 claims

Crane contends that Ogunsalu's claims against her arise from her participation in the administrative proceedings against him, and she is thus absolutely immune from his § 1983 claims. "Absolute immunity extends to agency officials when they preside over hearings, initiate agency adjudication, or otherwise perform functions analogous to judges and prosecutors." *Romano v. Bible*, 169 F.3d 1182, 1186 (9th Cir. 1999) (citing *Butz v. Economou*, 438 U.S. 478, 514-15 (1978)); *see also Olsen v. Idaho State Bd. Of Medicine*, 363 F.3d 916, 928–29 (9th Cir. 2004) (holding that a state medical board and its counsel are immune from liability for claims arising from judicial actions in disciplinary proceedings). Under the prosecutorial immunity doctrine, prosecutors are entitled to absolute immunity in civil rights damage lawsuits when their prosecutorial activities are "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). "A prosecutor is protected by absolute

immunity from liability for damages under § 1983 'when performing the traditional functions of an advocate.'" *Genzler v. Loganbach*, 410 F.3d 630, 636 (9th Cir. 2005) (quoting *Kalina v. Fletcher*, 522 U.S. 118, 131 (1997)). While a prosecutor performing administrative or investigative functions are only entitled to qualified immunity, "evaluating evidence and interviewing witnesses" in preparation for trial is governed by absolute immunity. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). Additionally, "an agency attorney who arranges for the presentation of evidence on the record in the course of an adjudication is absolutely immune from suits based on the introduction of such evidence." *Butz*, 438 U.S. at 517. Ogunsalu's claims against Crane stem from her participation in the administrative proceeding and her presentation of evidence in that proceeding. She is therefore immune from Ogunsalu's § 1983 claims.

Ogunsalu responds that Crane is not entitled to absolute immunity (1) because of the *Ex parte Young*, 209 U.S. 123 (1908) exception to Eleventh Amendment immunity, (2) because her actions were not prosecutorial in nature, and (3) because she had knowledge that OAH action against Crane was "unlawful and unconstitutional." ECF No. 46 at 7:12-15.

First, *Ex parte Young* doctrine is a narrow exception to Eleventh Amendment immunity which allows a plaintiff to sue official capacity defendants for an allegedly ongoing violation of federal law seeking "prospective declaratory and injunctive relief against state officers, sued in their official capacities, to enjoin an ongoing violation of federal law." *Agua Caliente Band of Cahuilla Indians v. Hardin*, 223 F.3d 1041, 1045 (9th Cir. 2000) (citing *Ex parte Young*, 209 U.S. 123, 155–56 (1908)). While prosecutors may be sued for injunctive relief, *see Ex parte Young*, 209 U.S. at 155-56, prosecutors receive absolute immunity from suits for money damages when conducting prosecutorial tasks, *Imbler*, 424 U.S. at 423. Here, Plaintiff only seeks compensatory and punitive damages against Crane, not injunctive relief. FAC, ECF No. 9 at p. 21. Therefore, the exception in *Ex parte Young* does not apply, and Plaintiff's argument is without support.

Second, viewing the allegations in the FAC in the light most favorable to Plaintiff, all of Crane's alleged actions fall within the scope of absolute immunity. Plaintiff alleges that Crane was assigned to his case "[m]ore than a year after Plaintiff appealed the 21-day suspension recommendation of the CTC Committee." FAC, ECF No. 9, ¶ 17. Although the remainder of Plaintiff's allegations against Crane regarding Plaintiff's federal claims are undated, they logically must have occurred after Crane was assigned to Plaintiff's case. *See id.* ¶ 18–21, 26, 41–43, 47, 52, 55, Ct. 1 ¶ 2, Ct. 2 ¶ 8, Ct. 3 ¶ 1–7, Ct. 4 ¶ 2, Ct. 5 ¶ 2, 3, 6, Ct. 6 ¶ 2, 5. In a criminal case, whether or not a criminal complaint has been filed is a relevant factor in determining whether a prosecutors action is protected by absolute immunity. *Genzler*, 410 F.3d at 640 (citing *Kulwicki v. Dawson*, 969 F.2d 1454, 1465 (3rd Cir. 1992)). So here, the fact that Crane's actions were taken well into the administrative process are relevant in showing that her actions were protected by absolute immunity. A majority of Plaintiff's factual allegations are in support of his claim that Crane presented false allegations against him and suborned perjury to support those allegations. *See* FAC, ECF No. 9, ¶¶ 11, 14, 20, 21, 26, 41, 42, 43, 47, 52, Ct. 3 ¶ 3, Ct 4 ¶ 2, Ct. 5 ¶ 2, 3. Soliciting false testimony from witnesses is protected by absolute immunity as long as the conduct was associated with a judicial proceeding. *See Burns*, 500 U.S. at 486, 490. The remainder of Plaintiff's allegations are either background information, or vague statements suggesting that Crane was part of a conspiracy to revoke Plaintiff's teaching credential. To the extent that these allegations support a claim, Crane's actions were lawyerly functions intimately tied to the judicial process and she is absolutely immune. *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 913 (9th Cir. 2012) (absolute immunity applies to "lawyerly functions of organizing and analyzing evidence and law . . . presenting evidence and analysis to the courts and grand juries on behalf of the government, [and] internal decisions and processes that determine how those functions will be carried out").

Third, Plaintiff claims that Crane had knowledge that the OAH's actions against Crane were "unlawful and unconstitutional." But even if Plaintiff's allegations are true,

8

3:17-cv-01766-GPC-AGS

"[judicial] immunity . . . leave[s] the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty." *Imbler*, 424 U.S. at 427; *Broam v. Bogan*, 320 F.3d 1023, 1029 (9th Cir. 2003) (a "prosecutor is entitled to the protection of absolute immunity whether or not he or she violated the civil plaintiff's constitutional rights"). Whether or not Crane's actions were illegal or unconstitutional is not salient. Because her actions were intimately tied to the judicial process, Crane is entitled to absolute immunity. Therefore, the Court GRANTS Defendant Crane's motion to dismiss the § 1983 causes of action.

### b. State Law Claims

Crane also moves to dismiss Ogunsalu's state law claims against her. Crane contends that Government Code section 821.6 bars liability for these claims. Section 821.6 provides, "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." Cal. Gov't Code § 821.6. This "immunity statute is given an 'expansive interpretation' in order to best further the rationale of the immunity, that is to allow the free exercise of the prosecutor's discretion and protect public officers from harassment in the performance of their duties." *Ingram v. Flippo*, 74 Cal. App. 4th 1280, 1292 (1999) (citation omitted). "Section 821.6 is not limited to conduct occurring during formal proceedings. It also extends to actions taken in preparation for formal proceedings. Because investigation is an essential step toward the institution of formal proceedings, it is also cloaked with immunity." *Javor v. Taggart*, 98 Cal. App. 4th 795, 808 (2002) (citation and quotation marks omitted).

Ogansalu argues that *Sullivan v. Cnty. of Los Angeles*, which "confin[es] [section 821.6's] reach to malicious prosecution actions," renders section 821.6 inapplicable to his claims. 12 Cal.3d 710, 721 (1974). In that case, the court decided "that the Legislature intended the section to protect public employees from liability only for *malicious prosecution* and not for *false imprisonment*." *Id.* at 719 (emphasis in original). Although the California Courts of Appeals have interpreted the rule more expansively, a court

9

"must determine what meaning the state's highest court would give the statute in question." *Goldman v. Standard Ins. Co.*, 341 F.3d 1023, 1026 (9th Cir. 2003). The Ninth Circuit believes that "the California Supreme Court would adhere to *Sullivan* even though California Courts of Appeal have strayed from it." *Garmon v. Cnty. of Los Angeles*, 828 F.3d 837, 847 (9th Cir. 2016).

In *Garmon*, the plaintiff alleged state law violations of Article I, § 13, of the California Constitution which prohibits unreasonable searches and seizures, and California Civil Code § 51 which bars discrimination based on sex, race, color, religion, ancestry, national origin or disability. *Garmon v Cnty of Los Angeles*, No. CV 10-6609-SJO(PJW), 2011 WL 6257150, at *1 (C.D. Cal. Oct. 18, 2011). The plaintiff alleged that "defendants violated her constitutional rights when they obtained and used her medical records in connection with the prosecution of her son." *Id.* at *5. The Ninth Circuit stated it must follow the California Supreme Court's application of § 821.6 as held in *Sullivan* and reversed the district court's dismissal of state law claims because they were not malicious prosecution claims. *Garmon*, 828 F.3d at 847. This included a claim where the Ninth Circuit held that the prosecutor was entitled to absolute immunity for issuing a subpoena duces tecum for the § 1983 claims but not the state law claims under § 821.6. *Id.* at 844.

Because the Court is bound by the Ninth Circuit ruling in *Garmon*, the Court concludes that Crane is not immune for the state law causes of action of civil conspiracy and intentional infliction of emotional distress as they are not claims for malicious prosecution. The Court DENIES Defendant's motion based on state law immunity under § 821.6.

In addition, Defendant argues the FAC should be dismissed because Plaintiff failed to plead compliance with the Government Tort Claims Act (GTCA), codified under California Government Code §§ 900 *et. seq*. *Wood v. Riverside Gen. Hosp.*, 25 Cal. App. 4th 1113, 1119 (1994) ("The timely filing of a claim [under the GTCA] is an essential element of a cause of action against a public entity and failure to allege compliance with

10

3:17-cv-01766-GPC-AGS

the claims statute renders the complaint subject to general demurrer"). "Under the Government Claims Act, no person may sue a public entity or public employee for 'money or damages' unless a timely written claim has been presented to and denied by the public entity." *Calderon v. United States*, Case No. 17cv40-BAM, 2018 WL 5906064, at *3 (E.D. Cal. Nov. 9, 2018) (citing Cal. Gov't Code § 945.4; *Curtis T. v. County of Los Angeles*, 123 Cal. App. 4th 1405 (2004)). The failure to timely file a claim with the public entity bars suit against the entity. *State of California v. Superior Ct.*, 32 Cal. 4th 1234, 1237 (2004). Therefore, if "a civil complaint does not affirmatively allege compliance with the claim presentation requirements, or allege facts showing that applicability of recognized exception or excuse for noncompliance, it must be dismissed." *Martinez v. Englert*, No. 10cv1569-AWI-DLB PC, 2012 WL 3689818, at *7 (E.D. Cal. Aug. 24, 2012). Plaintiff argues that emails sent to Crane and the other defendants provided the defendants with notice that he intended to file a lawsuit against them. Sending emails does not constitute compliance with the provisions of the GTCA. The statute requires that a claim be made with the Department of General Services. Cal. Gov't Code § 915(b). Because the FAC does not plead compliance with the GTCA, the Court GRANTS Defendant's motion to dismiss.

            c.      <u>Leave to Amend</u>

Crane asserts that leave to amend should not be granted. "Pro se plaintiffs should be given an opportunity to amend their complaints to overcome any deficiencies unless it clearly appears the deficiency cannot be overcome by amendment." *Ashelman v. Pope*, 793 F.2d 1072, 1078 (9th Cir. 1986) (en banc). Ogunsalu's § 1983 claims against Crane arise from actions for which she is entitled to prosecutorial immunity. It is clear that any amendment to Ogunsalu's pleading would not overcome this immunity as to the federal causes of action. Accordingly, the Court dismisses with prejudice Ogunsalu's claims against Crane on the § 1983 claims.

/ / / /

/ / / /

### d. Supplemental Jurisdiction

Under 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction over state law claims if the "district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Sanford v. Memberworks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (citation omitted).

Here, the federal causes of action have been dismissed with prejudice and the case is still in its early stages as no answers have been filed. There is no compelling reason to exercise supplemental jurisdiction over the state law claims. Accordingly, the Court declines to exercise supplemental jurisdiction over the state law claims as to Crane and dismisses the FAC. *See Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001) (upholding district court's refusal to exercise supplemental jurisdiction over state claims after dismissing federal claims, including dismissal of § 1983 claim for failure to state a claim); *San Pedro Hotel Co., Inc. v. City of Los Angeles*, 159 F.3d 470, 478 (9th Cir. 1998) (district court did not abuse its discretion by failing to provide explanation when it declined jurisdiction under § 1367(c)).

### B. Plaintiff's Motion for Reconsideration

Plaintiff also moves for reconsideration of the Court's order dismissing defendants CTC, OAH, Berg and Kindall. ECF Nos. 25, 31. A motion for reconsideration, under Rule 59(e), is "appropriate if the district court (1) is presented with newly discovered evidence; (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah Cnty, Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993); *see also Ybarra v. McDaniel*, 656 F.3d 984, 998 (9th Cir. 2011). "[R]econsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." *McDowell v. Calderon*, 197 F.3d

1253, 1255 n. 1 (9th Cir. 1999) (quoting 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2810.1 (2d ed. 1995)). Rule 59(e) "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n. 5 (2008) (citation omitted).

Plaintiff's motion for reconsideration amounts to an attempt to relitigate the Court's decision. Plaintiff argues that the decision contained clear error, but fails to identify that error, instead arguing the already decided issue of whether Berg and Kindall acted outside their jurisdiction.

Relying on *Pulliam v. Allen*, 466 U.S. 522 (1984), Plaintiff additionally argues that the Court erroneously dismissed his claims for injunctive relief as to Berg because those claims were not barred by absolute immunity. While judges are absolutely immune from civil liability for damages for acts performed in their judicial capacity, *Romano*, 169 F.3d at 1186, in *Pulliam*, the U.S. Supreme Court held that judicial immunity does not bar claims for injunctive relief in § 1983 actions. *Pulliam v. Allen*, 466 U.S. 522, 541-42 (1984) ("[w]e conclude that judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity."); *see also Ashelman*, 793 F.2d at 1075. Section 1983 now provides, "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."[1] 42 U.S.C. § 1983. Here, Plaintiff does not assert any claims in violation of a declaratory decree or that declaratory relief was not available. Therefore, the Court DENIES Plaintiff's motion for reconsideration.

---

[1] In 1996, Congress amended § 1983 to abrogate the holding in *Pulliam*. *Haas v. Wisconsin*, 109 F. App'x 107, 114 (7th Cir. 2004) ("This amendment was intended to overrule the Supreme Court's decision in [*Pulliam* ]."); *Yellen v. Hara*, Civil No. 15-300 JMS-KSC, 2015 WL 4877805, at *6 (D. Haw. Aug. 13, 2015) ("Congress responded to Pulliam in 1996 by amended § 1983 to abrogate its holding").

C. <u>Plaintiff's Motion to Compel Service</u>

On November 19, 2018, Plaintiff filed a Motion to Compel Service on Defendant Chara Crane. ECF No. 28. No response was filed. In his motion, Plaintiffs seeks the Court to direct Crane to accept the properly served complaint and summons by the U.S. Marshals. Crane has not disputed the service on her, and in fact, filed a motion to dismiss Plaintiff's FAC. Thus, the Court DENIES Plaintiff's motion as moot.

D. <u>Plaintiff's Motion for Entry of Default Judgment</u>

On December 4, 2018 Plaintiff filed his Motion for Entry of Default Final Judgment Against Defendant Chara Crane. ECF No. 37. Crane filed a response on December 21, 2018. ECF No. 50.

Rule 55 requires a "two-step process": a plaintiff must first seek a clerk's entry of default, and then once that is entered, a plaintiff may file a motion for the entry of default judgment. *See Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986) ("*Eitel* apparently fails to understand the two-step process required by Rule 55."); *Symantec Corp. v. Global Impact, Inc.*, 559 F.3d 922, 923 (9th Cir. 2009) (noting that Rules 55(a) and (b) provide a two-step process for obtaining a default judgment); *see also Norman v. Small*, No. 09cv2235 WQH, 2010 WL 5173683, at *2 (S.D. Cal. Dec. 14, 2010) (unpublished) (denying plaintiff's motion for default judgment because the clerk had not yet entered a default). Here, no entry of default has been filed. Thus, Plaintiff's motion for default judgment is procedurally improper and the Court DENIES the motion for entry of default judgment.

## CONCLUSION

For the reasons expressed above, the Court **GRANTS** Defendant Crane's motion to dismiss and Plaintiff Cornelius Oluseyi Ogunsalu's § 1983 claims against Defendant Chara Crane are **DISMISSED WITH PREJUDICE**. The Court also **DISMISSES** the state law claims and also **DECLINES** to exercise supplemental jurisdiction over them.

////

////

In addition, the Court also **DENIES** Plaintiff's Motion to Alter or Amend the Judgment, Motion to Compel Service and Motion for Entry of Default Judgment.

**IT IS SO ORDERED.**

Dated: April 3, 2019

Hon. Gonzalo P. Curiel
United States District Judge